# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Mother Doe 203, on her own behalf and on behalf of her minor child, Jane Doe 203, | )<br>)<br>)<br>) |
| Plaintiff, | )    C.A. No.: 2:14-cv-3575-PMD |
| v. | )    **ORDER** |
| Berkeley County School District and James Spencer, | )<br>)<br>) |
| Defendants. | ) |

This matter is before the Court on Defendant James Spencer's Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (ECF No. 9). For the reasons set forth herein, the Court grants Spencer's motion and dismisses the claim that Plaintiff Mother Doe 203 ("Mother") has asserted against Spencer.

## BACKGROUND/PROCEDURAL HISTORY

Mother's daughter, Jane Doe, attended Marrington Middle School in Goose Creek, South Carolina from 2012 to 2014. During that time, Spencer was Marrington's principal.

In February 2013, one of Jane Doe's male classmates began sexually molesting her. Later that month, Mother met with Spencer and other employees of Defendant Berkeley County School District ("District"). In the meeting, Mother told them that the classmate was abusing Jane Doe and had also abused other female students. Mother demanded that Jane Doe be protected from her classmate.

After that meeting, "Spencer took no action to protect Jane Doe" from her abusive classmate. (Compl., ECF No. 1-1, at ¶ 19.) Instead of investigating Mother's complaint or

protecting Jane Doe from further abuse, he "made a conscious decision to not restrict the male student's contact with Jane Doe." (*Id.* at ¶ 48.) Spencer left Jane Doe in class with her abuser for the rest of the 2012–2013 school year. During that time, the male student abused Jane Doe again on multiple occasions.

For the 2013–2014 school year, Spencer "permitted Jane Doe to be assigned to be in the same class as" the male student. (Compl., ECF No. 1-1, at ¶ 49.) The classmate continued to abuse Jane Doe until he was eventually removed from the school in 2014.

Mother contends Spencer's "inaction . . . created opportunity for the male student to sexually exploit Jane Doe." (Compl., ECF No. 1-1, at ¶ 52.) Because Spencer and other District employees took "no action to effectively restrain" the abusive classmate, (*id.* at ¶ 24), Mother sued the District and Spencer in state court. She asserted a claim against the District for violation of Title IX, 20 U.S.C. § 1681 *et seq.*, and two state-law claims for gross negligence and loss of services. She also asserted one claim against Spencer for violation of 42 U.S.C. § 1983.

Defendants removed the case to this Court and then filed an answer. On June 12, 2015, Spencer moved for judgment on the pleadings. Mother filed a Response in opposition on July 2. Spencer filed a Reply on July 20. This matter is now ripe for consideration.

## JURISDICTION

The Court has subject matter jurisdiction over Mother's two federal-law claims pursuant to 28 U.S.C. § 1331. Under 28 U.S.C. § 1367(a), the Court exercises jurisdiction over Mother's two related state-law claims because they are so related to the federal-law claims that they form part of the same case and controversy.

**STANDARD OF REVIEW**

A motion for judgment on the pleadings is designed to "dispos[e] of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further." 5C Charles A. Wright et al., *Federal Practice and Procedure* § 1368 (3d ed. 2004). A district court reviewing a Rule 12(c) motion applies the same standard that it applies to motions made under Rule 12(b)(6). *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014) (citing *Butler v. United States*, 702 F.3d 749, 751–52 (4th Cir. 2012)). Therefore, a motion for judgment on the pleadings should be granted only "'if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)).

**DISCUSSION**

Spencer argues the Court should dismiss Mother's § 1983 claim because he is entitled to qualified immunity. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Analyzing an assertion of qualified immunity involves two steps. First, the court must "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). If she has not, the analysis ends there because her § 1983 claim fails. *See id.* However, if she has, the court then "determine[s] whether that right was clearly established at the time of the alleged violation." *Id.* The answer to that question determines whether the defendant has to defend against the § 1983 claim. *See id.* As explained below, Mother's claim cannot survive the first step of the *Conn* analysis.

"Section 1983 imposes liability on state actors who cause the 'deprivation of any rights, privileges, or immunities secured by the Constitution.'" *Doe v. Rosa*, 795 F.3d 429, 436 (4th Cir. 2015) (quoting 42 U.S.C. § 1983). "[T]hese constitutional rights include a Fourteenth Amendment substantive due process right against state actor conduct that deprives an individual of bodily integrity. Accordingly, state actions that result in sexual abuse of children can be actionable under § 1983." *Id.* at 436–37 (internal citation omitted).

However, when a private actor perpetrates the sexual abuse, state actor liability for such harm "is significantly limited." *Rosa*, 795 F.3d at 437. The Due Process Clause, on which Mother's § 1983 claim is based, does not "impose an affirmative obligation on the State" to "protect the life, liberty, and property of its citizens against invasion by private actors." *DeShaney v. Winnebago Cty. Dep't of Social Servs.*, 489 U.S. 189, 195 (1989). "As a general matter, then, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *Id.* at 197; *see also id.* at 196–97 (stating that because "the Due Process Clause does not require the State to provide its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them"); *H.B. ex rel. C.B. v. State Bd. of Educ.*, No. 4:14-cv-204-BO, 2015 WL 2193778, at *3 (E.D.N.C. May 11, 2015) ("The Due Process Clause does not transform every tort committed by a state actor into a constitutional violation." (citing *DeShaney*, 489 U.S. at 202)).

*DeShaney* left open "two narrow circumstances" in which a state actor can be liable under § 1983 for privately caused harm. *Rosa*, 795 F.3d at 437. One of those circumstances arises in what is called the "state-created danger" doctrine. *See id.* at 438. Under the doctrine, a state actor is liable for actively creating or contributing to a dangerous situation that resulted in a

4

private person harming the plaintiff. *See Pinder v. Johnson*, 54 F.3d 1169, 1177 (4th Cir. 1995) (en banc). Under such circumstances, the state actor is liable because his creation of, or contribution to, the danger is "akin to . . . directly causing harm to the injured party." *Id.* Mother bases her § 1983 claim on this doctrine.

"[T]o establish § 1983 liability based on a state-created danger theory, a plaintiff must show that the state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission." *Rosa*, 795 F.3d at 439. Affirmative conduct by the state actor is a key requirement of the doctrine. *Id.* at 440 (citing *Butera v. District of Columbia*, 235 F.3d 637, 650 (D.C. Cir. 2001)); *see also DeShaney*, 489 U.S. at 200 (observing "it is the State's affirmative act" that "trigger[s] the protections of the Due Process Clause"). Failing to defuse a preexisting danger is not an affirmative act under the doctrine. *See Rosa*, 795 F.2d at 440 (holding college president was not liable for state-created danger where, "at worst, he failed to take actions that might have removed [the victims] from an ongoing danger that had been present for a long time"); *Butera*, 235 F.3d at 650 ("No constitutional liability exists where the State actors 'had no hand in creating the danger but [simply] stood by and did nothing when suspicious circumstances dictated a more active role for them.'" (quoting *Reed v. Gardner*, 986 F.2d 1122, 1125 (7th Cir. 1993)) (alteration in *Butera*)); *Sargi v. Kent City Bd. of Educ.*, 70 F.3d 907, 913 (6th Cir. 1995) (affirming summary judgment where there was "no evidence that the Board took any *affirmative* action that exposed decedent to any danger to which she was not already exposed"). Moreover, affirmative conduct alone does not necessarily translate to liability. The conduct must either create the risk of private harm or increase that risk. *Rosa*, 795 F.3d at 439. Accordingly, an act that does not increase the risk of harm from a preexisting danger cannot trigger liability under the doctrine. *See id.* ("As

5

*DeShaney* makes clear, allowing continued exposure to an existing danger by failing to intervene is not the equivalent of creating or increasing the risk of that danger."); *Armijo ex rel. Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1263 (10th Cir. 1998) ("[I]f the danger to the plaintiff existed prior to the state's intervention, then even if the state put the plaintiff back in that same danger, the state would not be liable because it could not have created a danger that already existed.").

These narrow contours of the state-created danger doctrine create a "demanding standard for constitutional liability." *Sargi*, 70 F.3d at 913; *see also Rosa*, 795 F.3d at 439 (stating that *DeShaney* and *Pinder* set "narrow limits" on the doctrine). Mother's allegations against Spencer do not meet that standard.

The Complaint makes clear that Mother's § 1983 claim is premised on Spencer's inaction after the February 2013 meeting. Allegations of "inaction" and "failure to act" appear throughout the Complaint. For example, Mother alleges that "Spencer took no action to protect Jane Doe" from her classmate; that Spencer "left the abusive male student in the class where the abuse had occurred"; that Spencer's "inaction . . . created opportunity for the male student to sexually exploit Jane Doe"; and that Spencer failed to investigate Mother's complaints and take appropriate action. (Compl., ECF No. 1-1, at ¶¶ 19, 49, 52.) She also alleges that by "failing to act," Spencer gave the male student additional opportunities to harm Jane Doe and that "by his inaction," Spencer "assisted" the student in harming Jane Doe. (*Id.* at ¶¶ 56, 62, 65.) Essentially, Mother's claim is that Spencer maintained the status quo for the rest of one school year and into the next one. None of this alleged inaction constitutes an affirmative act, and it neither created nor increased Jane Doe's preexisting risk of being harmed by her classmate.

Mother also contends Spencer "made a conscious decision to not restrict the male student's contact with Jane Doe" and that in the 2013–2014 school year, Spencer "permitted"[1] Jane Doe and her abuser to be in class together again. (Compl., ECF No. 1-1, at ¶¶ 48, 49.) Those decisions, however, do not constitute state-created danger because they neither created Jane Doe's danger nor increased the risk of that danger. At most, Mother has alleged that at the beginning of the 2013–2014 school year, Spencer participated in a student assignment decision that put Jane Doe back into the same danger she faced the prior academic year. As mentioned above, returning someone to a preexisting danger does not create § 1983 liability. *See Armijo*, 159 F.3d at 1263; *see also Rosa*, 795 F.3d at 440 (citing *Armijo*). Mother does not allege anything about the classmate's post-meeting abuse of Jane Doe that had not already been occurring before the February 2003 meeting. *See Rosa*, 795 F.3d at 440 ("There was simply nothing new about ReVille's perverted abuse of the Does in the summer of 2007 that had not already been occurring . . . ."). As such, Spencer's alleged conduct placed Jane Doe in "'no worse position than that in which [she] would have been had [Spencer] not acted at all.'" *Id.* (quoting *DeShaney*, 489 U.S. at 201).

Finally, Mother makes several direct allegations that Spencer created the danger for Jane Doe or increased its risk. Specifically, Mother alleges Spencer "created . . . the danger of enabling the male student's continuing access to Jane Doe." (Compl., ECF No. 1-1, at ¶ 54.) As discussed above, allowing the status quo to continue is not a state-created danger. She also alleges that "by taking no effective action to limit the male student's conduct" after the February 2013 meeting, Spencer increased Jane Doe's risk of harm. (*Id.* at ¶ 66.) Again, however,

---

1. Mother's use of "permitted" in the Complaint creates an ambiguity. She could be alleging that Spencer actively made the final decision for Jane Doe to spend the 2013–2014 school year in a classroom with the male student. Alternatively, Mother may be alleging that Spencer passively failed to intervene in someone else's class assignment decision. However, because neither of those meanings would result in a sufficiently pled claim, the Court need not decide which of them is more favorable to Mother.

7

Spencer's failure to separate Jane Doe and her abuser does not create § 1983 liability. *See Stevenson ex rel. Stevenson v. Martin Cty. Bd. of Educ.*, 3 F. App'x 25, 31 (4th Cir. 2001) (per curiam) ("Liability does not arise when the state stands by and does nothing in the face of danger."). Using the words "create" and "increase" does not transform Spencer's omissions into state-created danger. *See Pinder*, 54 F.3d at 1175 ("No amount of semantics can disguise the fact that the real 'affirmative act' here was committed by [a private actor], not by [the defendant]. . . . [T]he state did not 'create' the danger, it simply failed to provide adequate protection from it.").

Based on the above, the Court holds that Mother has not alleged facts sufficient to support her § 1983 claim against Spencer. In so holding, the Court has taken into account *H.B. ex rel. C.B. v. State Board of Education*, a recent district court opinion on which Mother relies. *H.B.* involved one student at a school for the deaf abusing another. 2015 WL 2193778, at *1. The abuse began with C.B., a day student at the school, being bullied by another student. *Id.* C.B.'s parents later considered enrolling C.B. as a residential student, which would involve him living in a school dormitory five nights per week. *Id.* However, they expressed to school officials their concerns that the other student would bully C.B. *Id.* The officials assured C.B.'s parents that if they enrolled C.B., he and the other student would be separated whenever possible, and so C.B.'s parents enrolled him in the residential program. *Id.* On C.B.'s first night in the dorm, a school employee assigned him to the same room as his bully. *Id.* C.B. asked to be moved to a different room, but his request was denied. *Id.* The next night, his bully raped him repeatedly and threatened to kill him if he tried to get help. *Id.* C.B.'s father sued, asserting a state-created danger § 1983 claim. *Id.* at *3. The defendants moved to dismiss under Rule 12(b)(6), but the district court denied the motion. *Id.* at *1, *3–4. Taking the complaint's facts

8

to be true, the court held the defendants created an "increased opportunity of contact" by placing C.B. and the bully in a room without any supervision "for an extended period overnight." *Id.* at *4.

The allegations in *H.B.* differ significantly from what Mother alleges. In *H.B.*, the defendants promised to protect the victim and then turned daytime schoolmates into unsupervised roommates, thereby increasing the one student's opportunities to brutalize the other. No such transformation occurred here. Spencer is accused of letting classmates stay classmates. That neither created the danger of Jane Doe's abuse nor increased the risk of it. At most, Spencer twice put Jane Doe "back in that same danger," *Armijo*, 159 F.3d at 1263, that she faced before the February 2013 meeting. Thus, *H.B.* does not support Mother's claim.

The Court does not condone Spencer's alleged course of inaction. However, because Mother has failed to allege that Spencer committed a Due Process violation, the Court grants Spencer's motion for judgment on the pleadings. The Court declines to address the second part of Spencer's qualified immunity argument. *See Rosa*, 795 F.3d at 442 n.10 (declining to address remainder of defendant's qualified immunity argument because plaintiffs failed to establish a violation of their constitutional rights).

## CONCLUSION

Therefore, for the foregoing reasons, it is **ORDERED** that Defendant James Spencer's Motion for Judgment on the Pleadings is **GRANTED**.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

**October 14, 2015**
**Charleston, South Carolina**

9